**EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Plaintiff,**

**and**

**Alicia Castrejon, Intervenor,**

**v.**

**TORTILLERIA "LA MEJOR," Defendant.**

**No. CV–F–87–505 REC.**

United States District Court, E.D. California.

Feb. 20, 1991.

John de J. Pemberton, San Francisco District Office, San Francisco, Cal., for E.E.O.C.

Inderjeet Singh Aulakh, Visalia, Cal., for Tortilleria "La Mejor," defendant.

Maria Blanco, San Francisco, Cal., for Equal Rights Advocates.

Francisco Garcia–Rodriguez and William Robert Tamayo, San Francisco, Cal., for intervenor.

## DECISIONS AND ORDERS RE MOTION TO DISMISS AND MOTIONS FOR PARTIAL SUMMARY JUDGMENT

COYLE, Chief Judge.

On November 28, 1988 the court heard defendant's Motion for Order Dismissing Intervenor's Complaint and plaintiff and intervenor's respective Motions for Partial Summary Judgment. Upon due consideration of the written and oral arguments of the parties and the record herein, the court denies defendant's motion and grants plaintiff's and intervenor's motions.

### A. *Motion for Order Dismissing Intervenor's Complaint.*

Defendant Tortilleria "La Mejor" moves for dismissal of intervenor Alicia Castrejon's Amended Complaint in Intervention filed on August 8, 1988 on two grounds.

Paragraphs 7 and 8 of the Amended Complaint allege in pertinent part:

7. Plaintiff-intervenor ALICIA CASTREJON is an aggrieved person within the meaning of 42 U.S.C. Section 2000e–5(f)(1) and as such has the right to intervene in the civil action brought by the Equal Employment Opportunity Commission.

8. Plaintiff-intervenor ALICIA CASTREJON, at all times, has been and continues to be an 'individual' within the meaning of Section 703(a)(1) of Title VII, 42 U.S.C. Section 2000e–2(a)(1).

Defendant argues that the allegation in paragraph 8 stands in defiance of a court order because it fails to allege the intervenor's citizenship status.

The court does not agree. The intervenor has complied exactly with the court's order filed on July 28, 1988.

Dismissal of the Amended Complaint in Intervention is also sought pursuant to Rule 37(b)(2)(C), Federal Rules of Civil Procedure. In so moving, defendant refers the court to the intervenor's answers to defendant's interrogatories concerning intervenor's citizenship status. The intervenor objected as irrelevant and did not answer interrogatories whether intervenor was a United States citizen when she first filed a complaint with the EEOC, when she first entered the United States, whether she first entered the United States illegally, and whether any United States consulate, embassy or immigration office granted her permission to enter the United States.

█ As intervenor points out, defendant's motion to dismiss is premature. Rule 37(b)(2)(C) provides in pertinent part:

(2) **Sanctions by Court in Which Action is Pending.** If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . . . .

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

As intervenor notes, neither the Magistrate nor this court have issued any *order* in connection with intervenor's responses to these interrogatories. The plain language of Rule 37(b)(2)(C) requires a court order compelling discovery before sanctions pursuant to the rule can be imposed. Consequently, dismissal on this ground is denied.

Moreover, because the court concludes that plaintiff and intervenor are entitled to summary judgment as a matter of law in connection with defendant's second, fifth, seventh and eighth affirmative defenses raised in defendant's answers to the Amended Complaints herein, *see infra*, there is no basis for further proceedings in connection with intervenor's answers to these interrogatories.

B. *Motions for Partial Summary Judgment.*

Pursuant to their respective amended complaints, the plaintiff and the intervenor have alleged that defendant unlawfully discriminated against intervenor in her employment on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Both amended complaints allege that intervenor is an individual within the meaning of Section 2000e–2(a)(1). Plaintiff's amended complaint[1] alleges in paragraph 11:

11. Ms. Castrejon is an undocumented alien employee. In October, 1987 she submitted documents to a Qualified Designated Entity (Tulare ALFA, FED # 70–715–00, 15582 Avenue 296, Suite B, Visalia, CA 93291) for processing for legalization pursuant to the Immigration Reform and Control Act (IRCA) of 1986, Pub.L. No. 99–603, 100 Stat. 3359) (codified in various sections of 8 U.S.C.)

In answering these amended complaints, defendant alleged the same affirmative defenses, i.e., the second, fifth, seventh and eighth, essentially alleging that the court lacks subject matter jurisdiction and that

---

**1.** Plaintiff was granted leave to file another amended complaint while these motions were under submission. However, the allegation at issue is identical to that in the prior amended complaint. Consequently, this order will refer to the amended complaint. However, this order is effective with respect to all pleadings amended after these motions were taken under submission.

plaintiff and intervenor lack standing to bring this suit because intervenor "is not an 'individual' within the meaning of … § 2000e–2(a)(1) in that she illegally and without consent of the Government of the United States entered the United States … and hence was neither a resident [sic] nor a citizen of the United States" and "[a]s an illegal alien, Ms. Castrejon has no cognizable rights under Title 7, USC § 2000e–2(a) and therefore the EEOC is barred from bringing any such suit under Title 7…." [2]

Plaintiff and intervenor have filed motions for partial summary judgment seeking a declaration by the court as a matter of law:

1. That Defendant's affirmative defenses alleging that an undocumented worker 'is not an "individual" within the meaning of 42 U.S.C. § 2000e–2(a)(1)' (Seventh Affirmative Defense) and therefore has no cognizable rights under Title 7 [sic] (Eighth Affirmative Defense) are legally insufficient and wholly without merit;

2. That in accordance with the applicable substantive law and long established administrative interpretations, the plain language of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, protects all 'employees' and 'individuals' in covered employment, regardless of immigration or citizenship status; and

3. That in light of the unambiguous congressional intent to provide Title VII protection to all covered employees, and notwithstanding passage of the Immigration and Control Act of 1986 (IRCA), Pub.L. No. 99–603, 100 Stat. 3359, an undocumented worker in covered employment may bring an action pursuant to the antidiscrimination provisions of Title VII.

1. *Whether Undocumented Alien Workers are Included Within Title VII's Definition of "Employee" and "Individual."*

■ The issue of whether an undocumented or illegal alien employee is entitled to the protections of Title VII against the employment discrimination outlawed therein has never been decided by the courts.[3] As explained in *Brock v. Writers Guild of America, West, Inc.*, 762 F.2d 1349, 1353 (9th Cir.1985);

In construing a statute in a case of first impression, we look to the traditional signposts of statutory construction: first, the language of the statute itself …; second, its legislative history … and as an aid in interpreting Congress' intent, the interpretation given to it by its administering agency….

Turning therefore to the language of Title VII, the term "employee" is defined in 42 U.S.C. § 2000e(f) to mean:

[A]n individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State

---

**2.** Defendant's answer to plaintiff's second amended complaint does not allege these numbered affirmative defenses. The pertinent affirmative defenses now appear to be the fourteenth and the seventeenth affirmative defenses. The fourteenth and the seventeenth affirmative defenses do not set forth the identical allegations as set forth above. However, the court's subject matter jurisdiction and the standing of the EEOC are challenged and the Scheduling Conference Order filed on February 8, 1991 makes clear that the defenses set forth above remain at issue in this action.

**3.** The moving parties have filed a statement of additional authority citing *Rios v. Enterprise Association Steamfitters Local Union 638 of U.A.*, 860 F.2d 1168 (2d Cir.1988). In *Rios*, the Second Circuit holds that illegal aliens who remain in the United States are entitled to backpay awards under Title VII. However, the Second Circuit did not decide the effect of the IRCA on Title VII claims arising after the effective date of IRCA.

government, governmental agency or political subdivision.

Section 2000e–1 provides in pertinent part "[t]his subchapter shall not apply to an employer with respect to the employment of aliens outside any State ...," the term "State" being defined in Section 2000e(i) as including "a State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam, Wake Island, the Canal Zone, and Outer Continental Shelf Lands defined in the Outer Continental Shelf Lands Act." Also excluded from coverage under Title VII are religious individuals employed by religious entitles to perform work connected with their activities, Section 2000e–1, Communist Party members, Section 2000e–2(f) and persons deemed risks to national security, Section 2000e–2(g).

Moving parties argue that the statute on its face plainly encompasses undocumented alien employees because Title VII's very specific and limited exemptions from covered employees do not include documented or undocumented aliens and because Title VII sets forth no exemptions based on immigration status or legal capacity to work in the United States.

Defendant responds that the moving parties' proposed statutory construction of the plain meaning of the statute is an "utterly unwarranted conclusion." Defendant contends:

> If Congress intended Title VII protections, it could very clearly and very easily have said so. Congress chose not to do so. In fact the *alien exemption provision* indicates Congress did not contemplate illegal aliens in the United States as having Title VII rights.

> Eight years after enactment of Title VII, Congress added coverage and afforded protection by extending the act to cover federal employees. At the same time Congress included the *alien exemption provision* as follows:

> > All personal actions affecting employees or applicants for employment (*except with regard to aliens employed outside the limits of the United*

*States*). (Emphasis in original) 42 U.S.C. § 2000e–16(a)(19).

Had Congress intended illegal aliens to be covered, Congress would have indeed said so. Thus, it is quite clear that Title VII affords no protection to citizens of the United States who are discriminated extraterritorially.

However, the statute provides that aliens employed outside of the United States, as defined by statute, are not subject to Title VII. Nowhere does the statute provide that citizens employed outside the United States are exempt from coverage. *See Seville v. Martin Marietta Corp.*, 638 F.Supp. 590, 592 (D.Md.1986); *compare Boureslan v. Aramco*, 892 F.2d 1271 (5th Cir.), *cert. granted sub nom. EEOC v. Arabian American Oil Co.*, ── U.S. ──, 111 S.Ct. 40, 112 L.Ed.2d 17 (1990). Moreover, defendant's contention that Congress' failure to explicitly state whether or not undocumented aliens are covered by Title VII means that they are not covered is not supported by canons of statutory construction. Such specificity in stating exemptions strengthens the implication that employees not thus exempted remain within Title VII. *See Powell v. United States Cartridge Co.*, 339 U.S. 497, 517, 70 S.Ct. 755, 766, 94 L.Ed. 1017 (1950).

Defendant further argues that because undocumented aliens are not entitled to receive supplemental security income benefits, 42 U.S.C. § 1382c, benefits under Aid to Families with Dependent Children, 42 U.S.C. § 602(a)(33), Medicaid, 42 C.F.R. § 435.402, unemployment insurance, 26 U.S.C. § 3304(a)(14)(A), and food stamps, 7 U.S.C. § 2015(f), Congress must have intended to deny the protections of our laws, including Title VII, to undocumented aliens. However, as the moving parties reply, the argument is without merit and must be rejected:

> First, the matter before this court involves the employment rights of an employee and not the eligibility of the employee for public benefits. Congress' determination of who is eligible for public benefits is irrelevant to an action under Title VII. Second, the statutory lan-

guage of the public benefits referred to by the defendant *specifically* limits the benefits to citizens and lawful resident aliens. Thus, when Congress sought to limit a statute's coverage on the basis of immigration status, it explicitly stated so. [Footnotes omitted].

"If the intent of Congress is clear, that is the end of the matter; for the court ... must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). However, if the court concludes that the plain meaning of Title VII is ambiguous, the court may look to the interpretation given to it by the EEOC. While the EEOC's administrative interpretation of the scope of Title VII is not entitled to controlling weight, it is entitled to great deference even though it is not a contemporaneous interpretation of Title VII. *See General Electric Co. v. Gilbert,* 429 U.S. 125, 140–143, 97 S.Ct. 401, 410–412, 50 L.Ed.2d 343 (1976); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 431, 95 S.Ct. 2362, 2378, 45 L.Ed.2d 280 (1975).

Here, the court is persuaded that the plain meaning of the statute supports the moving parties. This conclusion is also reinforced by the consistent position of the EEOC.

There is no question that the EEOC has never construed Title VII as excluding undocumented aliens. Since 1981 the EEOC's Compliance Manual has provided:

"[T]he acceptance or rejection of a Title VII charge should not hinge upon the potential charging party's status as a documented or undocumented alien. It is the Commission's position that the term 'any individual' in § 703 of the Act includes any person, whether documented or not, within the jurisdictional boundaries of any 'State.' " ...

EEOC Compliance Manual (CCH), 3806 at 3810–11 (1982). The EEOC has reaffirmed this position since the passage of IRCA. EEOC Compliance Manual (CCH), 3820 at 3813 [sic] (1987).

Other than pointing out that the EEOC's administrative interpretation is not controlling, defendant presents no cogent argument why the court should not defer to it. Defendant simply states: "If Title VII does not apply extraterritorially, a fortiori, it would not apply—absent an express intent by Congress—to an illegal alien employed within the United States." However, as noted *supra,* this argument is without merit.

Supreme Court precedent also supports the inclusion of undocumented aliens within the scope of Title VII.

In *Espinoza v. Farah Manufacturing Co.,* 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973), the Supreme Court held that while it would be violative of Section 2000e–2(a)(1) for an employer to discriminate against aliens because of race, color, religion, sex or national origin, such as by hiring aliens of certain ancestry but refusing to hire aliens of other ancestry, nevertheless an employer's refusal to hire any aliens because of lack of American citizenship did not constitute discrimination on the basis of national origin. In so holding, the Supreme Court stated:

Finally, petitioners seek to draw support from the fact that Title VII protects all individuals from unlawful discrimination, whether or not they are citizens of the United States. We agree that aliens are protected from discrimination under the Act. That result may be derived not only from the use of the term 'any individual' in § 703, but also as a negative inference from the exemption in § 702, which provides that Title VII 'shall not apply to an employer with respect to the employment of aliens outside any State....'

The question posed in the present case, however, is not whether aliens are protected from illegal discrimination under the Act, but what kinds of discrimination the Act makes illegal. Certainly it would be unlawful for an employer to discriminate against aliens because of race, color, religion, sex, or national origin—for example, by hiring aliens of Anglo–Saxon background but refusing to hire those of

Mexican or Spanish ancestry. Aliens are protected from illegal discrimination under the Act, but nothing in the Act makes it illegal to discriminate on the basis of citizenship or alienage.

*Id.* at 95, 94 S.Ct. at 340.

In *Sure–Tan, Inc. v. NLRB,* 467 U.S. 883, 891–894, 104 S.Ct. 2803, 2808–10, 81 L.Ed.2d 732 (1984), the Supreme Court held in pertinent part that the National Labor Relations Act applies to unfair labor practices committed against undocumented aliens.

Because the provisions of Title VII were largely modeled on those of the NLRA, courts frequently are guided by principles developed under the NLRA in construing Title VII. *See Albemarle Paper Co. v. Moody, supra* at 419 and n. 11, 95 S.Ct. at 4372 and n. 11; *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 768–770, 96 S.Ct. 1251, 1266–67, 47 L.Ed.2d 444 (1976); *Ford Motor Co. v. EEOC,* 458 U.S. 219, 226 n. 8, 102 S.Ct. 3057, 3062 n. 8, 73 L.Ed.2d 721 (1982). Moreover, cases construing the definitional provisions of one statute are persuasive authority when interpreting nearly identical provisions in another statute. *Hyland v. New Haven Radiology Associates, P.C.,* 794 F.2d 793, 796 (2d Cir.1986); *Armbruster v. Quinn,* 711 F.2d 1332, 1336 (7th Cir.1981).

Referring to the statement in *Sure–Tan, Inc., id.* at 893, 104 S.Ct. at 2809, that "[s]ince the employment relationship between an employer and an undocumented alien is hence not illegal under the INA, there is no reason to conclude that application of the NLRA to employment practices affecting such aliens would necessarily conflict with the terms of the INA[,]" defendant argues that the precedential value of *Sure–Tan, Inc.* has been undermined by IRCA's provisions making it unlawful for an employer to hire an illegal alien without work authorization.

However, the focus of this argument is misplaced. Before it can be determined whether the IRCA alters the scope of Title VII, the scope of Title VII must be determined.

Consequently, the court concludes, as a matter of law, that the protections of Title VII were intended by Congress to run to aliens, whether documented or not, who are employed within the United States.

### 2. *Whether the IRCA Alters the Scope of Title VII.*

The moving parties argue that the enactment of the IRCA does not alter the scope of Title VII's protections available to undocumented aliens. In *Patel v. Quality Inn South,* 846 F.2d 700 (11th Cir.1988), *cert. denied,* 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 182 (1989), the Eleventh Circuit reversed the district court opinion reported at 660 F.Supp. 1528 (N.D.Ala.1987). The Eleventh Circuit first held that the district court's conclusion that Congress did not intend to protect undocumented workers when it passed the FLSA contrary to the overwhelming weight of authority. 846 F.2d at 702–703. The Eleventh Circuit then held that the passage of the IRCA had no effect on the FLSA's coverage of undocumented aliens, stating at 704–705:

We begin our analysis by noting the familiar principle that amendments by implication are disfavored. Only when Congress' intent to repeal or amend is clear and manifest will we conclude that a later act implicitly repeals or amends an earlier one.... Here, nothing in the IRCA or its legislative history suggests that Congress intended to limit the rights of undocumented aliens under the FLSA. To the contrary, the FLSA's coverage of undocumented aliens is fully consistent with the IRCA and the policies behind it. The IRCA's legislative history strongly suggests that Congress believed that undocumented aliens would continue to be protected by the FLSA. The House Education and Labor Committee Report to the IRCA states:

[T]he committee does not intend that any provision of this Act would limit the powers of State or Federal labor standards agencies such as the ... *Wage and Hour Division of the Department of Labor* ... in conformity with existing law, to remedy unfair practices committed against undoc-

umented employees for exercising their rights before such agencies or for engaging in activities protected by those agencies. To do otherwise would be counter-productive of our intent to limit the hiring of undocumented employees and the depressing effect on working conditions caused by their employment.

... Section 111(d) of the IRCA is even more revealing. In Section 111(d) Congress specifically authorized the appropriation of additional funds for increased FLSA endorsement on behalf of undocumented aliens. Section 111(d) reads:

> There are authorized to be appropriated, in addition to such sums as may be available for such purposes, such sums as may be necessary to the Department of Labor for enforcement activities of the Wage and Hour Division ... in order to deter the employment of unauthorized aliens and remove the economic incentive for employers to exploit and use such aliens.

... This provision would make little sense if Congress had intended the IRCA to repeal the FLSA's coverage of undocumented aliens.

Indeed, the FLSA's coverage of undocumented aliens goes hand in hand with the policies behind the IRCA. Congress enacted the IRCA to reduce illegal immigration by eliminating employers' economic incentive to hire undocumented aliens. To achieve this objective the IRCA imposes an escalating series of sanctions on employers who hire such workers. *See* 8 U.S.C. § 1324a. The FLSA's coverage of undocumented workers has a similar effect in that it offsets what is perhaps the most attractive feature of such workers—their willingness to work for less than the minimum wage. If the FLSA did not cover undocumented aliens, employers would have an *incentive* to hire them. Employers might find it economically advantageous to hire and underpay undocumented workers and run the risk of sanctions under the IRCA.

We recognize the seeming anomaly of discouraging illegal immigration by allowing undocumented aliens to recover in an action under the FLSA. We doubt, however, that many illegal aliens come to this country to gain the protection of our labor laws. Rather it is the hope of getting a job—at any wage—that prompts most illegal aliens to cross our borders. By reducing the incentive to hire such workers the FLSA's coverage of undocumented aliens helps discourage illegal immigration and is thus fully consistent with the objectives of the IRCA. We therefore conclude that undocumented aliens continue to be 'employees' covered by the FLSA.

■ The moving parties argue that the Ninth Circuit will reach the same result as the Eleventh Circuit with respect to the effect of the IRCA on the application of the NLRA to undocumented aliens. The court agrees. In *Local 512, Warehouse & Office Workers' Union v. NLRB (Felbro)*, 795 F.2d 705, 722 (9th Cir.1986), the Ninth Circuit held:

> In *Sure–Tan*, the Supreme Court did not address the issue whether undocumented workers remaining at work in the United States throughout the backpay period are entitled to backpay awards. *Sure–Tan* barred from backpay only those undocumented workers who were unavailable for work in the backpay period because they were outside the United States without entry papers. Judicial and Board decisions, notably this court's [*NLRB v.*] *Apollo Tire* [604 F.2d 1180 (9th Cir.1979)] decision, recognize the right to backpay of undocumented discriminatees who are available for work in the United States. This recognition promotes the underlying aims of the NLRA and does not detract from the purposes of the INA. Moreover, the Board exceeds both its authority and its expertise in requiring its compliance officers to determine the immigration status of an individual discriminatee.

Subsequently, in a decision without published opinion, *NLRB v. Ashkenazy Property Management Corp.*, 796 F.2d 479 (9th Cir. 1986), the Ninth Circuit affirmed the decision of the NLRB, that Ashkenazy had

engaged in unfair labor practices with certain employees who were also undocumented aliens. The NLRB then began looking into the immigration status of the discriminatees partly because of the intervening enactment of the IRCA.[4] The Ninth Circuit, in *NLRB v. Ashkenazy Property Management Corporation*, 817 F.2d 74, 75 (9th Cir.1987) held:

> The charging party's motion to compel compliance with our decision in this case, issued on July 28, 1986, 796 F.2d 479, is denied. The NLRB has agreed that it will comply with that decision in light of our earlier decision in *Local 512, Warehouse & Office Workers' Union v. NLRB (Felbro)*, 795 F.2d 705 (9th Cir. 1986). In *Felbro*, we held that, in the case of workers present in the United States, remedies afforded for violations of the National Labor Relations Act, 29 U.S.C. § 158 (1982), were to be implemented regardless of the worker's immigration status. *Id.*
> The Board's statement that it is agreeing to comply with *Felbro* in this case only is unacceptable. Administrative agencies are not free to refuse to follow circuit precedent in cases originating within the circuit, unless the Board has a good faith intention of seeking review of the particular proceeding by the Supreme Court.... However, any future act of 'non-acquiescence' should be dealt with by this court in the specific context in which it occurs so that we may address the agency's particular violation of the rule of law and fashion a remedy that is appropriate in light of all the relevant circumstances.

*See also E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1517–1518 ns. 10 & 11 (9th Cir. 1989).

■ Defendant argues that any extension of the Eleventh Circuit's decision in *Patel* to support the moving parties' position that illegal aliens have all civil rights under Title VII is unwarranted. Defendant contends that one case, *Bhandari v.*

*First National Bank of Commerce*, 829 F.2d 1343 (5th Cir.1987), *vacated*, 492 U.S. 901, 109 S.Ct. 3207, 106 L.Ed.2d 558 (1989), *reinstated*, 887 F.2d 609, *cert. denied*, —— U.S. ——, 110 S.Ct. 1539, 108 L.Ed.2d 778 (1990), is sufficient to refute any argument to the contrary. However, *Bhandari* involves none of the issues raised in *Patel* and none of the issues before the court in these motions. At issue in *Bhandari* was whether 42 U.S.C. § 1981 gives a remedy for discrimination against aliens by private persons.

Turning to the specific issue before the court, the moving parties argue that there is nothing in the IRCA or its legislative history indicating that Congress intended to alter the application of Title VII to undocumented workers. In this regard the court is referred to the House Judiciary Report on the IRCA, H.R.Rep. No. 682(I), 99th Cong.2d Sess. 58 (1986), U.S. Code Cong. & Admin. News 1986, pp. 5649, 5662, wherein it is stated:

> It is not the intention of the Committee that the employer sanctions provisions of the bill be used to undermine or diminish in any way labor protections in existing law, or to limit the powers of federal or state labor relations boards, labor standards agencies, or labor arbitrators to remedy unfair labor practices committed against undocumented employees for exercising their rights before such agencies or for engaging in activities protected by existing law.

Thus, the House Judiciary Report specifically reaffirmed the Supreme Court's holding in *Sure–Tan, Inc.* and further noted that "the employer sanctions provisions are not intended to limit in any way the scope of the term 'employee' in [the NLRA]." The court is also referred to the House Education and Labor Committee Report, H.R.Rep. No. 682 (II), 99th Cong.2d Sess. 8–9 (1986), U.S. Code Cong. & Admin.News 1986, p. 5758 which states in pertinent part:

---

**4.** *See* Respondent's Opposition·to Charging Party's Motion to Compel Compliance filed in *NLRB v. Ashkenazy Property Management Corp.*, a copy of which has been filed with this court

and with respect to which the court takes judicial notice pursuant to Rule 201(b), Federal Rules of Evidence, as requested by *amicus curiae*.

In addition, the committee does not intend that any provision of this Act would limit the powers of ... the Equal Employment Opportunity Commission ... in conformity with existing law, to remedy unfair practices committed against undocumented employees, for exercising their rights before such agencies or for engaging in activities protected by those agencies.

In addition, the moving parties remind the court of the long-standing EEOC administrative interpretation that Title VII applies to undocumented aliens. *See Lorillard v. Pons*, 434 U.S. 575, 580–581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978):

Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change ... So too, where, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute.

Defendant's opposition to the moving parties' arguments concerning Congress' intent with regard to the IRCA is of little assistance in resolving the issue. Defendant argues:

As to the newly enacted Immigration Reform and Control Act of 1986 (IRCA) comentators [sic] and in particular Professor Vernon M. Briggs, an eminent scholar at Cornell University, says that IRCA 'bans for the first time discrimination in employment against non-citizens.' This means, of course, that prior to 1986, non-citizens were discriminated against in employment as a matter of policy. A rule of statutory construction here applicable is the rule which presumes that *new* legislation which relates to the subject matter of prior legislation sheds light on the intent of the prior legislation because Congress when it speaks on a particular subject must intend either to harmonize that subject or to change something about the pre-existing law relating to it. Otherwise, Congress presumptively would not waste its time dealing *with something it has satisfactorily dealt with before.*

Thus, when it is said that IRCA (1986) bans discrimination for the 'first time', Congress must have recognized that illegal aliens were and had been subjected to 'discrimination' and by banning discrimination 'for the first time' wished to harmonize this 'subject'. One must ask why there are no reported decisions holding that an illegal alien is entitled to the protections of Title VII. Further, why the MALDEF brief has not been able to cite one single solitary case in support of this proposition and finally, why do the plaintiff-intervenor (MALDEF) concede 'no court has specifically held' that illegal aliens 'are employees within the meaning of Title VII.'

First of all, the failure to name the commentators and provide citations to their comments negates any validity to the apparent argument that commentators consistently view the IRCA as banning for the first time discrimination in employment against non-citizens. The same is true for the failure to give a citation to the comment of Professor Briggs. Secondly, Professor Briggs' comment is simply wrong, *see Sure–Tan, Inc., supra; Espinoza, supra,* unless his comment refers to the fact that the IRCA bars discrimination on the basis of citizenship to 8 U.S.C. § 1324(b).

Secondly, defendant cites no authority for the "rule" of statutory construction set forth above. As noted by the Eleventh Circuit in *Patel, supra,* 846 F.2d at 704: "[A]mendments by implication are disfavored. Only when Congress' intent to repeal or amend is clear and manifest will we conclude that a later act implicitly repeals or amends an earlier one."

Thirdly, the lack of case law specifically on point is simply not relevant. One can surmise several reasons why there is none, the primary one no doubt being fear of deportation.

The court concludes that Congress did not intend that the IRCA amend or repeal any of the previously legislated protections of the federal labor and employment laws

**594**

accorded to aliens, documented or undocumented, including the protections of Title VII.

### C. *Conclusion.*

ACCORDINGLY, IT IS ORDERED that defendant's Motion for Order Dismissing Intervenor's Complaint is denied.

IT IS FURTHER ORDERED that plaintiff and intervenor's respective motions for Partial Summary Judgment are granted and that plaintiff and intervenor are entitled to summary judgment with respect to the relevant affirmative defenses.[5]

---

**5.** Defendant has not disputed plaintiff's argument that intervenor is entitled to all relief available under Title VII, including backpay and reinstatement, if liability is found because intervenor is a legalization applicant and a grandfathered employee under IRCA. The court assumes that this absence of opposition is a concession that plaintiff's position is correct.

Because of the court's rulings herein, the court expresses no opinion with respect to plaintiff's alternative arguments that intervenor is entitled to coverage and relief under Title VII in light of the protections extended by IRCA to employees "grandfathered" under IRCA and because she is a "legalization applicant" under IRCA.