Rehearing en banc granted by order filed 12/17/96;
published opinion filed 9/13/96 is vacated.

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

OBIORA E. EGBUNA,
Plaintiff-Appellant,

v.

TIME-LIFE LIBRARIES, INCORPORATED,

No. 95-2547

Defendant-Appellee.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
Amicus Curiae.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-95-197)

Argued: May 8, 1996

Decided: September 13, 1996

Before RUSSELL and ERVIN, Circuit Judges, and NORTON,
United States District Judge for the District of South Carolina,
sitting by designation.

_____

Reversed and remanded by published opinion. Judge Ervin wrote the
majority opinion, in which Judge Norton joined. Judge Russell wrote
a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** John P. Racin, WEISSBRODT, RACIN & MIELKE,
Washington, D.C., for Appellant. Samuel Alan Marcosson, Office of

General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. Donald R. Livingston, AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Nina J. Ginsberg, DIMURO, GINSBERG & LIEBERMAN, P.C., Alexandria, Virginia, for Appellant. C. Gregory Stewart, General Counsel, Gwendolyn Young Reams, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, Office of General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. Lawrence D. Levien, Neil J. Welch, Jr., Harry J. F. Korrell, AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P., Washington, D.C., for Appellee.

_____

**OPINION**

ERVIN, Circuit Judge:

We must decide whether a Title VII plaintiff must demonstrate that he is eligible to work in the United States under the Immigration Reform and Control Act of 1986 to establish a prima facie case of employment discrimination. We find that work eligibility is not part of the prima facie case, and therefore reverse the district court's summary judgment.

I.

Appellant Obiora Egbuna, a Nigerian national, was employed by appellee Time-Life Libraries ("TLLI") from June 1989 until April 1993. When Egbuna was initially hired, he was authorized by the Immigration and Naturalization Service ("INS") to work in the United States. Harrison Jackson, a TLLI employee whom Egbuna supervised, reported to Egbuna that he had been sexually harassed by another employee; Egbuna cooperated with TLLI's internal investigation and corroborated some of Jackson's allegations. In April 1993, Egbuna voluntarily resigned from TLLI, but sought reemployment in June 1993. By this time, Egbuna's authorization to work in the United States had expired, and in fact had expired before the end of his prior employment with TLLI. Although the company apparently initially

2

offered to rehire him, TLLI ultimately withdrew this offer, claiming that Egbuna had not followed company policy in reporting Jackson's complaints.

Egbuna sued TLLI, alleging that the company had refused to rehire him because of his participation in enforcement proceedings related to Jackson's complaints, in violation of Title VII, 42 U.S.C. § 2000e-3(a) (1988). The district court required Egbuna to prove that he was qualified for the position he sought in order to show that he was a victim of discrimination. Memorandum Opinion, in Joint Appendix at 93-94 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). Because Egbuna lacked employment authorization (a "green card"), he could not show that he was qualified, the court found. Accordingly, the court granted summary judgment for TLLI. Egbuna timely filed his notice of appeal; Fourth Circuit jurisdiction thus lies under 28 U.S.C. § 1291.

II.

Summary judgments are reviewed de novo on appeal. E.g., Higgins v. E.I. Du Pont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988); Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1127-28 (4th Cir. 1987).

This appeal involves the interaction of two separate federal statutes. One is Title VII, which makes it unlawful to discriminate in employment. 42 U.S.C. § 2000e et seq. The second is the Immigration Reform and Control Act of 1986 ("IRCA"), which makes it illegal to knowingly employ an unauthorized alien. 8 U.S.C.A. § 1324a(a)(1) (Supp. 1996). We must decide whether an undocumented alien-- ineligible to work under the IRCA--may bring a Title VII action for failure to hire. This is a question of first impression in this circuit.

Egbuna sued TLLI under 42 U.S.C. § 2000e-3(a), which provides that it is an illegal employment practice to discriminate against an applicant for employment "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." This court has explained that the proof scheme set forth in McDonnell

3

Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), applies in § 2000e-3 retaliation claims.**1** Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985). First, the employee must make out a prima facie case of retaliation by showing three elements: "1) the employee engaged in protected activity; 2) the employer took adverse employment action against the employee; and 3) a causal connection existed between the protected activity and the adverse action."**2** Id. Once a prima facie case is established, the employer may proffer a legitimate, nondiscriminatory reason for its action, which rebuts the presumption of retaliation. Id. This shifts the burden back to the employee, who must show that the employer's reason is pretextual. Id.

TLLI concedes that Egbuna engaged in protected activity, and that it did not rehire him. Thus, Egbuna has met the first two requirements of a prima facie case. TLLI argues that the only issue at the summary judgment stage was "whether Egbuna, who could not have been hired by TLLI, can demonstrate a causal connection between the protected activity and TLLI's failure to employ him." Id. Egbuna argues that he has satisfied the minimal requirements of the prima facie case standard, including the third element, by alleging that "the Company declined to [rehire him] based solely upon his witness status."

As far as we can determine, only one other court has addressed the specific question before us here,**3** and that court held that unauthorized

_____

**1** This is an unusual case in that Egbuna alleges that the failure to hire was retaliatory. Usually, someone who is not hired does not have a prior relationship with the employer and the refusal to hire is alleged to have been discriminatory rather than retaliatory.

**2** Although the Ross court explained that the illegal conduct must be the "but-for" cause of the challenged action in the retaliation context, the Civil Rights Act of 1991 amended Title VII to provide that a statutory violation has occurred if "race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m) (Supp. III 1991). The Civil Rights Act does not specifically address unlawful employment practices as defined by § 2000e-3(a), the statute under which Egbuna seeks recovery.

**3** Before the enactment of the IRCA, the Supreme Court acknowledged that Title VII protects aliens against discrimination. Espinoza v. Farah

4

aliens are protected under Title VII despite the provisions of the IRCA. EEOC v. Tortilleria "La Mejor", 758 F. Supp. 585, 593-94 (E.D. Cal. 1991). An undocumented-alien employee filed a Title VII sex discrimination claim. Id. at 586. The court found that Title VII applied to undocumented aliens, and noted that the EEOC has always so construed the statute. Id. at 589. The court then considered whether the enactment of the IRCA altered the scope of Title VII's protections, and concluded that "Congress did not intend that the IRCA amend or repeal any of the previously legislated protections of the federal labor and employment laws accorded to aliens, documented or undocumented, including the protections of Title VII." Id. at 592-94; see also EEOC v. Hacienda Hotel, 881 F.2d 1504, 1517 n.10 & n.11 (9th Cir. 1989) (assuming, without deciding, "that the undocumented workers in this case were entitled to the protections of Title VII," but noting that the IRCA "may well . . . change[ ] the mix of policy considerations underlying the case law which supports our conclusion that undocumented employees may recover back pay in a Title VII action").

In a Fair Labor Standards Act ("FLSA") case, the Eleventh Circuit found that the IRCA did not effect the FLSA's application to undocumented aliens, in part based on the principle that"amendments by implication are disfavored." Patel v. Quality Inn South, 846 F.2d 700, 704-05 (11th Cir. 1988), cert. denied, 489 U.S. 1011 (1989). That court concluded that there was no policy conflict created by applying both statutes:

_____

Mfg. Co., 414 U.S. 86, 95 (1973). In Sure-Tan, Inc. v. NLRB, 467 U.S. 883 (1984), also decided before the IRCA, the Supreme Court held that undocumented aliens are considered "employees" within the definition of the National Labor Relations Act. Id. at 892 (1984). The Sure-Tan Court specifically noted that the Immigration and Nationality Act ("INA"), which regulated entry into the United States, did not make it "unlawful for an employer to hire an alien who is present or working in the United States without appropriate authorization." Id. at 892-93. Because the INA did not proscribe the relationship between employer and undocumented-alien employee, there was no conflict presented by applying both the INA and the NLRA. Id. at 893. In contrast to the INA, the IRCA prohibits employers from hiring employees without green cards, 8 U.S.C.A. § 1324a(a)(1), and requires verification of each potential employee's status, id. § 1324a(b).

5

Congress enacted the IRCA to reduce illegal immigration by eliminating employers' economic incentive to hire undocumented aliens. To achieve this objective the IRCA imposes an escalating series of sanctions on employers who hire such workers. See 8 U.S.C. § 1324a. The FLSA's coverage of undocumented workers has a similar effect in that it offsets what is perhaps the most attractive feature of such workers --their willingness to work for less than the minimum wage. If the FLSA did not cover undocumented aliens, employers would have an incentive to hire them. Employers might find it economically advantageous to hire and underpay undocumented workers and run the risk of sanctions under the IRCA.

. . . By reducing the incentive to hire such workers the FLSA's coverage of undocumented aliens helps discourage illegal immigration and is thus fully consistent with the objectives of the IRCA. We therefore conclude that undocumented aliens continue to be "employees" covered by the FLSA.

Id. at 705.

The crux of TLLI's argument rests on its claim that Egbuna was not qualified to work. The company argues that Egbuna's lack of work authorization rendered him unqualified, resulting in an inability to make a prima facie case of retaliatory failure to hire; therefore, TLLI argues, it need not make any showing of its motive as required by the second stage of the McDonnell Douglas framework. But Egbuna argues that this court "should reject[TLLI's] effort to shield its otherwise unlawful conduct by reference to immigration law that it knowingly violated for a period of forty months."[4]

Both Egbuna and the EEOC, as amicus curiae, argue that the trial court should not have made work authorization part of the prima facie

_____

[4] Under 8 U.S.C.A. § 1324a(a)(2), "[i]t is unlawful for a person or other entity, after hiring an alien for employment . . ., to continue to employ the alien in the United States knowing the alien is (or has become) an unauthorized alien with respect to such employment."

6

case stage, but instead should have allowed TLLI to come forward with Egbuna's undocumented status at the second stage of the McDonnell Douglas paradigm, as the non-discriminatory motivation for its action. Then, Egbuna argues, he could at least demonstrate a material issue of fact as to whether TLLI's proffered justification was pretextual:

> The parties' long employment relationship, most of which occurred in violation of the IRCA, [and] the glowing recommendation for reemployment from the branch manager in July 1993 urging creation of a virtually unique position for appellant [ ] were adequate to put in issue both whether the Company would have employed appellant in violation of immigration law in July 1993 and whether in the circumstances the Company was likely to hold the position open pending appellant's receipt of work authorization.

The EEOC argues that ineligibility to work under the IRCA "represents a potential legitimate, non-discriminatory reason for an employment decision"--not a basis for exclusion from the protections of Title VII--and "is relevant if the employer actually relied on it in making the decision." Thus, work authorization should properly be considered not at the prima facie case stage, but rather at the second stage, "if and when the employer asserts it as the legitimate, non-discriminatory explanation for the decision." The plaintiff then has the opportunity to show that the employer's explanation is pretextual and that its actual motivation was discriminatory.

The district court's decision endorses a proof scheme that allows employers who have discriminated to be protected from their discrimination on the basis of information on which they did not rely. In other words, here TLLI really does not claim that it failed to rehire Egbuna because of his undocumented status, but it nonetheless is shielded from its possible Title VII violations because Egbuna turned out to be undocumented. This is contrary to the Supreme Court's decision in McKennon v. Nashville Banner Publishing Co., 115 S. Ct. 879 (1995), in which the Court held that, when an employee is fired for an illegal reason (there a violation of the ADEA), after-acquired evidence of a legitimate basis for termination does not shield the employer for liability under the violated statute. Id. at 881.

7

This case involves two separate issues, despite TLLI's interest in collapsing the two. TLLI may very well have violated Title VII; and Obiora Egbuna did not have work authorization at the time he sought to be rehired by TLLI. Under the district court's ruling, TLLI would escape all liability for its possible Title VII violation because of Egbuna's undocumented status. That would be inappropriate. Instead, the parties should proceed through the McDonnell Douglas framework. TLLI may assert Egbuna's lack of work authorization as a legitimate non-discriminatory basis for its decision, and Egbuna may attempt to show that the asserted basis is pretextual.

III.

We believe that the legislative effort to fight employment discrimination by protecting those who make or support allegations of improper conduct is best served by holding that a Title VII claimant need not show work authorization as part of the prima facie case. This conclusion does no damage to the distinct legislative decision to proscribe the hiring of undocumented workers under the IRCA. As the Eleventh Circuit noted, uniform application of this nation's labor laws removes a possible economic incentive to hiring illegal workers. An applicant's lack of work authorization remains a relevant consideration; it may be proffered by an employer as the legitimate, non-discriminatory reason for its action, and it may ultimately be relevant to the question of remedies should a Title VII violation be established.[5]

We reverse the decision below and remand the case to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED

_____

[5] See Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 889, 902-03 (1984) (reinstatement and backpay may not be appropriate for claimants who have been deported and therefore are not "available for work"). Sure-Tan would not necessarily dictate that Egbuna could not be reinstated or recover backpay, however, because he received work authorization only a short time after TLLI refused to rehire him. These factual questions are best left for the district court to consider on remand.

8

RUSSELL, Circuit Judge, dissenting:

I respectfully dissent to the panel's holding to remand this case so that the parties may litigate this question under the McDonnell-Douglas framework. Under that framework, an employee is not to be ordered employed unless he is qualified for the sought-after position. To be qualified, an alien must possess the requisite employment authorization. Egbuna is an alien without a green card. He therefore does not qualify for employment at Time-Life Libraries, Inc., and I do not think that, merely because he is an alien, the immigration laws should be held subject to Title VII.

9