**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MAXIME GEDEON,
Plaintiff-Appellant,

v.

No. 97-2566

HOST MARRIOTT CORPORATION;
MARRIOTT DISTRIBUTION SERVICES,
INCORPORATED,
Defendants-Appellees.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-97-2048-AW)

Submitted: June 23, 1998

Decided: July 23, 1998

Before WILKINS, HAMILTON, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Randall L. Johnson, JOHNSON & ASSOCIATES, Arlington, Virginia, for Appellant. Todd J. Horn, VENABLE, BAETJER & HOWARD, L.L.P., Baltimore, Maryland; Nancy C. Lee, MARRIOTT INTERNATIONAL, INC., Washington, D.C., for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Maxime Gedeon appeals from the district court order granting the Defendant's motion for summary judgment and dismissing Gedeon's employment discrimination action. Gedeon, a Haitian native, instituted an action against his former employer, Host Marriott Corporation (Marriott), alleging unlawful discrimination in terminating his employment under 42 U.S.C.A. § 2000e to 2000e-17 (West 1994 & Supp. 1998). Gedeon alleges that Marriott fired him because of his race and national origin.

Gedeon worked for Marriott beginning in the summer of 1986 as "buy out" labor. In early 1987, Marriott employed him as a janitor in a distribution center. In October 1987 Gedeon retained an attorney to assist him in his application for political asylum in the United States. His attorney contacted Marriott and indicated that Gedeon was a political refugee and would be seeking political asylum in the United States. At approximately the same time, Gedeon discussed the possibility of receiving a labor certification from Marriott which would serve as Marriott's sponsorship of Gedeon for legal permanent residence in the United States. The labor certification was not prepared or acted upon at that time.

Approximately three weeks later, Gedeon signed an Employment Eligibility Verification Form (Form I-9), which falsely identified him as a citizen or national of the United States. Gedeon alleges that a manager at Marriott prepared the form for him and supplied the information and he signed it at a time when he understood little English.

Gedeon continued to work in the distribution center for eight years. He was an adequate employee, was given a variety of responsibilities, and was never disciplined. At the end of 1995 Gedeon and Marriott again discussed the possibility of Marriott sponsoring him for his

2

legal permanent residence. Gedeon again retained an attorney to complete the necessary paperwork. Gedeon gave the Application for Alien Employment Certification to Kenn Floren, the general manager at Marriott, to sign. The application stated Gedeon's position as "Manager, Warehouse." It listed the wage earned as that of the warehouse manager position. Gedeon's position at the time was a janitor in the warehouse, with a lower wage than what he reported for the manager position.

Floren told Gedeon that changes needed to be made on the application before it could be signed. The form was not signed. On February 7, 1996, Floren called Gedeon in to participate in a conference call with Gloria Evans, a member of Marriott's legal staff. Evans told Gedeon that Marriott would not sponsor him and that because Haiti had a new president it would be better for him to return to Haiti because "[y]our country is good now." Evans then instructed Gedeon's supervisor to terminate Gedeon immediately, which he did. Marriott contends that it terminated Gedeon for falsification of the Form I-9 and misrepresentation of his position and salary on the labor certification application.

Gedeon filed a charge of employment discrimination based upon national origin with the Equal Employment Opportunity Commission (EEOC). The EEOC found insufficient evidence of a statutory violation, and closed its investigation. Gedeon then filed suit in the district court alleging discrimination in the termination of employment on account of race and national origin, and wrongful termination in violation of public policy.

Marriott filed a motion to dismiss or in the alternative for summary judgment. The district court found that Gedeon could not proceed on his claim of race discrimination because it was not presented to the EEOC. The court further found that Gedeon did not establish a prima facie case of national origin discrimination. Accordingly, the court dismissed his action. Gedeon timely appealed.

The district court properly dismissed the race discrimination claim. Gedeon's EEOC charge only alleges that Marriott discharged him because of his nationality. The rest of the charge is also limited to nationality discrimination. Gedeon never discussed race discrimina-

3

tion in his EEOC charge. Gedeon also concedes that he did not raise this claim.

This court has held that:

> [t]he allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint. Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.

Evans v. Technologies Applications & Serv. Co. , 80 F.3d 954, 962-63 (4th Cir. 1996) (citation omitted). Gedeon now claims that the racial discrimination is related to, or grows out of, the allegations of discrimination on the basis of nationality because all Haitians are black. However, he could have requested an investigation of racial discrimination when filing with the EEOC. Gedeon admits that they are two different forms of discrimination. Gedeon's racial discrimination claim is not sufficiently similar to a nationality discrimination claim to merit considering the claims to be related. Cf. Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992). Accordingly, we affirm the district court's dismissal of the racial discrimination claim.

To establish a prima facie case of discriminatory discharge under Title VII, Gedeon must establish that he is a member of a protected class, he was qualified for the job he held and performed it satisfactorily, in spite of his qualifications and performance Marriott discharged him, and that the circumstances of the discharge raise the inference of discrimination. See Carter v. Ball, 33 F.3d 450, 458-59 (4th Cir. 1994).[1]

_____

[1] Gedeon may not meet the second requirement, that he is qualified for the position he held. Gedeon argues that he was qualified for the job because he received authorization to continue working under the grandfather clause of the Immigration Reform and Control Act of 1986 (IRCA), 8 U.S.C.A. § 1324a(a)(2) (Supp. 1996), which states that the Act will not apply to individuals hired before the Act's enactment. The

4

Regardless of whether Gedeon met the required elements of the prima facie case, Marriott has articulated a legitimate, non discriminatory reason for Gedeon's discharge. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 514-15 (1993). Marriott alleges that due to two material misrepresentations Gedeon made to Marriott that it discovered in the course of its investigation of Gedeon's Application for Alien Employment Certification, Marriott terminated his employment.[2] The first misrepresentation was Gedeon's signature on the I-9 form, where he claimed to be a United States citizen. At the time, Gedeon was not a United States citizen. The second misrepresentation was the incorrect employment position information supplied by Gedeon on the Application for Alien Employment Certification.

Even though Marriott prepared the I-9 form for Gedeon to sign and Gedeon did not have a good understanding of the English language, Gedeon is still responsible for the information he swears to. In addition, he reported an incorrect job description and wage information on the Application for Alien Employment Certification. Finally, Gedeon did not put forth any evidence that his termination for providing false information in these documents was pretextual. He does not present any evidence that his termination was based upon a discriminatory motive. Indeed, Gedeon's supervisor even assented to Marriott's sponsorship of Gedeon on his labor certification. It was not until Floren discovered the misrepresentations on this certification that any adverse employment action was taken against him. Therefore, this

_____

relevant issue is whether Gedeon was qualified at the time Marriott hired him. Gedeon was an illegal alien when he was hired by Marriott in early 1987 and his citizenship was misrepresented on the I-9 form. This court has a case pending on in banc rehearing, Egbuna v. Time-Life Libraries, Inc., 95 F.3d 353 (4th Cir. 1996) (vacated), that presents the issue of whether an alien without employment authorization is qualified for employment under the McDonnell Douglas framework. Even if the court finds that an alien without employment authorization is "qualified for employment," Marriott was entitled to summary judgment.

[2] In Marriott's materials supporting its motion for summary judgment, Marriott submitted the personnel action sheet terminating Gedeon. It only gives a numerical termination code without stating what the code number stands for.

5

case is not subject to an after-acquired evidence analysis. <u>See Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1237-38 (4th Cir. 1995). Finally, Marriott cannot legally employ an alien without employment authorization. <u>See</u> 8 U.S.C.A. § 1324a(a)(1) (West Supp. 1998).

We therefore affirm the district court order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

6