Rajni J. PATEL, Plaintiff–Appellant,

v.

QUALITY INN SOUTH, Manibhai Patel
and Dilip Patel, Sumani Corp., Inc.,
Defendant–Appellees.

No. 87–7411.

United States Court of Appeals,
Eleventh Circuit.

June 8, 1988.

George M. Boles, Birmingham, Ala., Bob
Humphries, Montgomery, Ala., Gay C.
Danforth, Altshuler & Berzon, Michael
Rubin San Francisco, Cal., for plaintiff-appellant.

Bette J. Briggs, Office of Sol., Steven J.
Mandel, George R. Salem, U.S. Dept. of
Labor, Washington, D.C., amicus curiae for
Dept. of Labor.

Robert H. Gibbs, Gibbs, Douglas, Theiler
& Drachler, Seattle, Wash., amicus curiae
for American Civil Liberties Union, et al.

Joseph L, Boohaker, Birmingham, Ala.,
for defendants-appellees.

Daniel Hoyt Smith, Smith, Midgley &
Pumplin, Seattle, Wash., amicus curiae for
American Immigration Lawyers Ass'n.

Daniel A. Stein, Washington, D.C., amicus curiae for Immigration Reform Law Inst.

Peggy Mastroianni, E.E.O.C., Washington, D.C., amicus curiae for E.E.O.C.

Before VANCE and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

VANCE, Circuit Judge:

In this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–19, plaintiff Rajni Patel, an undocumented alien, appeals from the district court's grant of summary judgment for the defendants. *See* 660 F.Supp. 1528 (N.D.Ala. 1987). In granting the defendants' motion for summary judgment the district court concluded that undocumented aliens could not recover in an action under the FLSA. We disagree and reverse.

## I.

On June 1, 1982 Patel came to the United States from India on a visitor's visa. Although his visa expired after six weeks, Patel remained in the United States and in July 1983 he began working for defendant Sumani Corporation at its hotel, the Quality Inn South, in Birmingham, Alabama. Patel performed a variety of tasks at the hotel, including maintenance and janitorial work. He continued working at the hotel until October 1985.

In August 1986 Patel brought this action against the Quality Inn South and its owners. He alleges that the defendants violated the wage and overtime provisions of the FLSA and seeks to recover unpaid back wages of $47,132 plus liquidated damages and attorneys' fees. At a March 18, 1987 pretrial conference the district court suggested to the defendants that they file a motion for summary judgment on the ground that Patel, as an undocumented alien, was not entitled to the protections of the FLSA. Able to take a hint, the defend-

ants promptly filed a motion for summary judgment. On March 24 the court ordered the Department of Labor to file a statement of its position on the issue. In its response the Department of Labor took the position that undocumented aliens were covered by the provisions of the FLSA and thus were entitled to its protections.

On May 27, 1987 the district court granted the defendants' motion for summary judgment and held that undocumented aliens could not recover for violations of the FLSA. In reaching its conclusion the court indicated that it could find no authority for the proposition that illegal aliens were protected by the FLSA. It also relied heavily on the recently enacted Immigration Reform and Control Act of 1986 (IRCA), Pub.L. No. 99–603, 100 Stat. 3359 (codified in scattered sections of 8 U.S.C.). The IRCA, passed as an amendment to the Immigration and Nationality Act (INA), makes it unlawful to hire illegal aliens and provides for sanctions against employers who do.

The district court concluded that the application of the wage and overtime provisions of the FLSA to undocumented aliens would conflict with the INA as amended by the IRCA. The court reasoned that to give the protections of the FLSA to undocumented aliens would encourage illegal immigration and thus undermine the policies behind the INA. The court stated:

> The IRCA was intended to remove an economic incentive for illegal entry into the United States ... and to correct a policy in the past of allowing illegal aliens the full protection of all laws designed to protect workers legally within this country. Thus, the IRCA was designed to correct or ameliorate those provisions of the INA which in effect condoned and encouraged undocumented aliens to enter this country to work. This court's decision holding that an illegal alien cannot obtain a remedy for violations by his employer of the provisions of the FLSA is fully consistent with the objectives of federal immigration law as now amended.

660 F.Supp. at 1534. Following the court's entry of judgment for the defendants, Patel brought this appeal.

## II.

### A.

In deciding whether undocumented aliens are entitled to the protections of the FLSA we begin by examining the act itself. Congress enacted the FLSA in 1938 to eliminate substandard working conditions. *See* 29 U.S.C. § 202. It requires covered employers to pay their employees a statutorily prescribed minimum wage, *Id.* § 206, and prohibits employers from requiring their employees to work more than forty hours per week unless the employees are compensated at one and one half times their regular hourly rate. *Id.* § 207(a)(1). For violations of its provisions the FLSA imposes criminal sanctions and allows employees to bring an action to recover any unpaid minimum wages and overtime plus liquidated damages and attorney's fees.[1] *Id.* § 216(a), (b).

In section 3(e) of the FLSA, *Id.* § 203(e), Congress defined the term "employee" for the purpose of determining who would be covered by the act. It would be difficult to draft a more expansive definition. The term "employee" was defined to include "any individual employed by an employer." *Id.* § 203(e)(1). In subsequent paragraphs Congress set forth specific exceptions to this broad definition. Section 3(e)(2) governs which employees of public agencies are covered by the act. *Id.* § 203(e)(2). In section 3(e)(3) Congress provided a limited exception for the immediate family members of employers engaged in agriculture. *Id.* § 203(e)(3). Finally, section 3(e)(4) exempts from coverage a narrow group of state and local government workers. *Id.* § 203(e)(4). This definitional framework—a broad general definition followed by several specific exceptions—strongly suggests that Congress intended an all encompassing definition of the term "employee" that would include all workers not specifically excepted.[2]

That Congress intended a broad definition of the term "employee" is also apparent from the FLSA's legislative history. One representative described the act as "the most momentous and far-reaching measure that [Congress has] considered for many years." 83 Cong.Rec. 9262 (1938) (statement of Rep. Fish). The remarks of then Senator Hugo Black, the FLSA's chief legislative sponsor, are even more instructive. During debate over the act Senator Black declared that its "definition of employee ... is the broadest definition that has ever been included in any one act...." 81 Cong.Rec. 7656–57 (1937).

Given the unequivocal language of the FLSA and its legislative history, it is not surprising that the Supreme Court has adopted an expansive definition of the term "employee" in its decisions under the act. Although it has never faced the question of whether undocumented aliens are covered by the FLSA, the Court consistently has refused to exempt from coverage employees not within a specific exemption. As the Court explained in *Powell v. United States Cartridge Co.*, 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017 (1950):

> Breadth of coverage was vital to [the FLSA's] mission.... Where exceptions were made, they were narrow and specific. [Congress] included as employees "any individual employed by an employer" § 3(e), and.... devoted § 13 to listing *exemptions of specific classes of employees....* Such specificity in stating exemptions strengthens the implication that employees not thus exempted ... remain within the Act.

339 U.S. at 516–17, 70 S.Ct. at 766 (emphasis in original). *See also A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945) (exemptions from the FLSA should be narrowly construed); *United States v. Rosenwasser,*

---

1. The Secretary of Labor is also authorized to bring such an action on workers' behalf. *See* 29 U.S.C. § 216(c).

2. Congress also set forth a number of specific exemptions in section 13 of the FLSA, 29 U.S.C. § 213. Significantly, none of these exemptions concerns immigration status.

323 U.S. 360, 362–63, 65 S.Ct. 295, 296, 89 L.Ed. 301 (1945) (Congress intended to include all employees within the scope of the FLSA unless specifically excluded); *cf. Citicorp Indus. Credit, Inc. v. Brock,* —— U.S. ——, 107 S.Ct. 2694, 2700, 97 L.Ed.2d 23 (1987) (FLSA's specific and detailed exemptions preclude enlargement by implication).

In *Sure–Tan, Inc. v. NLRB,* 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984), the Court used similar reasoning when it held that undocumented aliens are "employees" within the meaning of the National Labor Relations Act (NLRA). The Court stated:

> The breadth of § 2(3)'s definition is striking: the Act squarely applies to "any employee." The only limitations are specific exemptions.... Since undocumented aliens are not among the few groups of workers expressly exempted by Congress, they plainly come within the broad statutory definition of "employee."

467 U.S. at 891–92, 104 S.Ct. at 2808. Congress enacted both the FLSA and the NLRA as part of the social legislation of the 1930's. The two acts have similar objectives. More importantly the two acts similarly define the term "employee," and courts frequently look to decisions under the NLRA when defining the FLSA's coverage. *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 723, 67 S.Ct. 1473, 1473, 91 L.Ed. 1772 (1947); *see Marshall v. Abbott Farms, Inc.,* 559 F.2d 1006, 1007 & n. 1 (5th Cir.1977).[3] Thus, the Supreme Court's decision in *Sure–Tan* weighs heavily in favor of Patel's contention that Congress did not intend to exclude undocumented aliens from the FLSA's coverage.

■ The Department of Labor also supports Patel's position. It first interpreted

the FLSA to cover undocumented aliens in 1942, when the Wage and Hour Administrator opined that alien prisoners of war were covered by the act and therefore were entitled to be paid the minimum wage. Since that time the Department of Labor has enforced the FLSA on behalf of undocumented workers on numerous occasions. *See, e.g., Donovan v. Burgett Greenhouses, Inc.,* 759 F.2d 1483 (10th Cir.1985); *Brennan v. El San Trading Corp.,* 73 Lab.Cas. (CCH) ¶ 33,032 (W.D.Tex.1973). To be sure, we are not bound by the Department of Labor's interpretation of the FLSA. As the agency charged with implementing the act, however, the Department's interpretation is entitled to considerable deference. *Tony and Susan Alamo Found. v. Secretary of Labor,* 471 U.S. 290, 105 S.Ct. 1953, 1959, 85 L.Ed.2d 278 (1985); *cf. Sure–Tan,* 467 U.S. at 891–92, 104 S.Ct. at 2808 (deferring to Department of Labor's interpretation of the term "employee" under the NLRA).[4]

In short, the defendants' contention that Congress did not intend to protect undocumented workers when it passed the FLSA is contrary to the overwhelming weight of authority. Nothing in the FLSA or its legislative history suggests that Congress intended to exclude undocumented workers from the act's protections. The defendants conceded as much during oral argument. The defendants, however, rest their hopes on two recent developments which they contend preclude Patel from recovering under the FLSA. They argue: (1) that in light of the IRCA undocumented aliens are no longer entitled to the protections of the FLSA, and (2) that even if undocumented aliens were covered by the FLSA, the Supreme Court's decision in *Sure–Tan* precludes them from recovering an award of back pay or liquidated damages. We will address these contentions in turn.

---

3. Under the NLRA the term "employee" is defined to include "any employee," subject only to several specifically enumerated exceptions. *See* 29 U.S.C. § 152(3). Thus, the NLRA's definitional framework is virtually identical to that of the FLSA.

4. The Department of Labor's interpretation is supported by the limited case law in this area. A number of courts have concluded, either ex-

pressly or implicitly, that undocumented aliens are entitled to the FLSA's protections. *See, e.g., In re Reyes,* 814 F.2d 168, 170 (5th Cir.1987); *Burgett Greenhouses,* 759 F.2d at 1485; *Castillo v. Givens,* 704 F.2d 181, 183 (5th Cir.), *cert. denied,* 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983); *Lopez v. Rodriguez,* 668 F.2d 1376, 1377–78 & n. 4 (D.C.Cir.1981).

### B.

We first consider the effect of the IRCA on the rights of undocumented aliens under the FLSA. As we noted earlier, the district court relied heavily on the IRCA in granting the defendants' motion for summary judgment.

We begin our analysis by noting the familiar principle that amendments by implication are disfavored. Only when Congress' intent to repeal or amend is clear and manifest will we conclude that a later act implicitly repeals or amends an earlier one. *See, e.g., Rodriguez v. United States,* — U.S. —, 107 S.Ct. 1391, 1392, 94 S.Ct. 1391 (1987); *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976) (quoting *Posadas v. National City Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936)). Here, nothing in the IRCA or its legislative history suggests that Congress intended to limit the rights of undocumented aliens under the FLSA. To the contrary, the FLSA's coverage of undocumented aliens is fully consistent with the IRCA and the policies behind it.

The IRCA's legislative history strongly suggests that Congress believed that undocumented aliens would continue to be protected by the FLSA. The House Education and Labor Committee Report to the IRCA states:

[T]he committee does not intend that any provision of this Act would limit the powers of State or Federal labor standards agencies such as the ... *Wage and Hour Division of the Department of Labor* ... in conformity with existing law, to remedy unfair practices committed against undocumented employees for exercising their rights before such agencies or for engaging in activities protected by those agencies. To do otherwise would be counter-productive of our intent to limit the hiring of undocumented employees and the depressing effect on working conditions caused by their employment.

H.R.Rep. No. 99–682 (II), 99th Cong., 2d Sess. 8–9, *reprinted in* 1986 U.S.Code Cong. & Admin.News, 5649, 5757, 5758 (emphasis added). Section 111(d) of the IRCA is even more revealing. In section 111(d) Congress specifically authorized the appropriation of additional funds for increased FLSA enforcement on behalf of undocumented aliens. Section 111(d) reads:

There are authorized to be appropriated, in addition to such sums as may be available for such purposes, such sums as may be necessary to the Department of Labor for enforcement activities of the Wage and Hour Division ... in order to deter the employment of unauthorized aliens and remove the economic incentive for employers to exploit and use such aliens.

Pub.L. No. 99–603, § 111(d), 100 Stat. 3357, 3381 (1986). This provision would make little sense if Congress had intended the IRCA to repeal the FLSA's coverage of undocumented aliens.

Indeed, the FLSA's coverage of undocumented aliens goes hand in hand with the policies behind the IRCA. Congress enacted the IRCA to reduce illegal immigration by eliminating employers' economic incentive to hire undocumented aliens. To achieve this objective the IRCA imposes an escalating series of sanctions on employers who hire such workers. *See* 8 U.S.C. § 1324a. The FLSA's coverage of undocumented workers has a similar effect in that it offsets what is perhaps the most attractive feature of such workers—their willingness to work for less than the minimum wage. If the FLSA did not cover undocumented aliens, employers would have an *incentive* to hire them. Employers might find it economically advantageous to hire and underpay undocumented workers and run the risk of sanctions under the IRCA.

We recognize the seeming anomaly of discouraging illegal immigration by allowing undocumented aliens to recover in an action under the FLSA. We doubt, however, that many illegal aliens come to this country to gain the protection of our labor laws. Rather it is the hope of getting a job—at any wage—that prompts most illegal aliens to cross our borders. By reducing the incentive to hire such workers the FLSA's coverage of undocumented

aliens helps discourage illegal immigration and is thus fully consistent with the objectives of the IRCA. We therefore conclude that undocumented aliens continue to be "employees" covered by the FLSA.

 Having determined that undocumented aliens are "employees" within the meaning of the FLSA we must address the defendants' contention that the Supreme Court's decision in *Sure–Tan* precludes undocumented aliens from recovering an award of back pay or liquidated damages. As we noted earlier, the Court in *Sure–Tan* held that undocumented aliens were employees covered by the NLRA. The Court, however, went on to reverse the lower court's award of back pay. 467 U.S. 898–905, 104 S.Ct. at 2812–15. In doing so, the Court stated that "the employees must be deemed 'unavailable' for work (and the accrual of backpay therefore tolled) during any period when they were not lawfully entitled to be present and employed in the United States." *Id.* at 903, 104 S.Ct. at 2814.[5]

The defendants, citing the similarities between the NLRA and the FLSA, contend that *Sure–Tan* precludes Patel's action for unpaid wages and liquidated damages. They argue that *Sure–Tan* prevents workers from recovering an award of back pay under the NLRA for periods when they were not legally present in the United States, and that the same result should obtain under the FLSA. We disagree.

At the outset we can find nothing in the FLSA itself to support the defendants' argument. Nothing in the act purports to limit the remedy available to any of the workers it covers. In giving workers an action for unpaid minimum wages and overtime the act simply states: "Any employer who violates the provisions of ...

this title shall be liable to the employee or employees affected...." 29 U.S.C. § 216(b). Nor does *Sure–Tan* require such a result, even if it does preclude undocumented aliens from recovering back pay under the NLRA.[6]

The defendants are correct when they point out that courts frequently look to cases decided under the NLRA when interpreting the FLSA. Indeed, in this case we cited *Sure–Tan* in support of our conclusion that undocumented aliens are employees covered by the FLSA. We do not, however, find the Supreme Court's resolution of the back pay issue in *Sure–Tan* persuasive in the context of a claim for unpaid wages under the FLSA.

In *Sure–Tan* the employer had violated the NLRA by reporting several alien employees to the Immigration and Naturalization Service in retaliation for their engaging in union activity. As a result of the employer's action, the alien employees were deported. On the issue of back pay the Court was faced with the question of whether the deported employees could recover for *the loss of their jobs*. The Court stated that unless the employees were lawfully in the United States they should be deemed "unavailable" for work and hence ineligible for back pay. 467 U.S. at 903, 104 S.Ct. at 2814.

This case, an action for unpaid minimum wages and overtime under the FLSA, presents different considerations. Patel is not attempting to recover back pay for being unlawfully deprived of a job. Rather, he simply seeks to recover unpaid minimum wages and overtime for work *already performed*. Under these circumstances the rationale the Supreme Court used in *Sure–Tan* to limit the availability of back pay under the NLRA to periods when the

---

5. In *Sure–Tan* the employers had violated the NLRA by reporting several employees to the Immigration and Naturalization Service in retaliation for union activity. The employees were arrested and deported to Mexico.

6. In *Local 512, Warehouse and Office Worker's Union v. NLRB,* 795 F.2d 705 (9th Cir.1986), the Ninth Circuit narrowly interpreted *Sure–Tan.* A panel of that court, with one judge dissenting, concluded that the Supreme Court's remarks in

*Sure–Tan* referred only to undocumented aliens who have left the country. *Sure–Tan* did not, the panel concluded, intend to foreclose awards of back pay under the NLRB to those aliens who remain in the United States. *See* 795 F.2d at 719–20. The question of the availability of back pay under the NLRB is not before us, and we express no opinion on the Ninth Circuit's interpretation of *Sure–Tan.*

employee was lawfully present in the United States is inapplicable. It would make little sense to consider Patel "unavailable" for work during a period of time when he was actually working.

Simply put, this is an area in which decisions under the NLRA are not helpful in interpreting the FLSA. Nothing in the FLSA suggests that undocumented aliens cannot recover unpaid minimum wages and overtime under the act, and we can conceive of no other reason to adopt such a rule. We therefore conclude that Patel is entitled to the full range of available remedies under the FLSA without regard to his immigration status.

### III.

In short, we hold that undocumented workers are "employees" within the meaning of the FLSA and that such workers can bring an action under the act for unpaid wages and liquidated damages. We therefore reverse the district court's judgment and remand the case for a determination of the merits of Patel's claim.

REVERSED and REMANDED.