[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 10-11984 & 10-14523
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 23, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:08-cv-20472-MGC

IVONNE E. GALDAMES,
JACQUELINE GALDAMES,
GUILLERMO OSORIO,
on their own behalf and others similarly situated,

Plaintiffs - Appellees,

versus

N & D INVESTMENT CORP.,
a Florida Corporation,
d.b.a. Mr. Clean Commercial Laundry,
OFER MANOR, individually,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(June 23, 2011)

Before WILSON, MARTIN and BLACK, Circuit Judges.

PER CURIAM:

N & D Investment Corporation and Ofer Manor ("Defendants") appeal an adverse jury verdict and award of attorneys' fees. Ivonne Galdames, Jacqueline Galdames, and Guillermo Osorio ("Plaintiffs") sued Defendants under the Fair Labor Standards Act ("FLSA"), alleging that they were not compensated for overtime work completed between 2005 and 2007. They sought just under $22,000. The district court granted Plaintiffs' partial summary judgment and then conducted a jury trial on the remaining issues. The jury awarded Plaintiffs approximately $14,000 in damages and found that Defendants either knowingly violated the FLSA or showed reckless indifference to the law. Based on the jury's latter finding, the district court awarded liquidated damages, resulting in an award of more than $28,000 for Plaintiffs. The district court also awarded Plaintiffs more than $100,000 in attorneys' fees as prevailing plaintiffs. After review of the extensive record and Defendants' brief, we affirm.[1]

## I.

The FLSA requires covered "employers" to pay overtime wages once "employees" exceed forty hours of work in a given week. 29 U.S.C. § 207(a). Except for the explicit exceptions within the statute, "the term 'employee' means

---

[1] Plaintiffs' motion to participate in oral argument is denied as moot.

any individual employed by an employer." § 203(e)(1).  Either individual coverage or enterprise coverage can trigger the FLSA, but here we are only concerned with enterprise coverage.  *Polycarpe v. E & S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010) (per curiam).  Enterprise coverage is triggered if an employer (1) "has employees engaged in commerce or in the production of goods for commerce, or [] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) has at least $500,000 of "annual gross volume of sales made or business done." § 203(s)(1)(A).  The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." § 203(b).

### A.

Defendants first contend that the district court committed reversible error in failing to grant their post-trial motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50.  They believe that Plaintiffs are not "employees" under the FLSA because they are illegal aliens.  Defendants argue, *inter alia*, that we should ignore binding, on-point precedent, *Patel v. Quality Inn*

3

*South*, 846 F.2d 700 (11th Cir. 1988).[2] They believe this is appropriate because (1) *Patel* conflicts with *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 122 S. Ct. 1275 (2002), and (2) it was decided "more than twenty (20) years ago, where [sic] the problems with illegal immigration and employment of illegal immigrant workers had not reached the exceptional proportions that they are at now in 2011 . . . ."

Earlier holdings by panels of this Court are binding "unless and until they are clearly overruled by this court en banc or by the Supreme Court. While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision must be clearly on point." *Randall v. Scott*, 610 F.3d 701, 707 (11th Cir. 2010) (citations and internal quotation marks omitted). A panel of this Court has previously determined that illegal aliens are covered "employees" under the FLSA. *Patel*, 846 F.2d at 706 ("In short, we hold

---

[2] Defendants present a number of other arguments under this heading as well. First, they believe a number of so-called "practical and policy-based" reasons justify the conclusion that illegal aliens are not covered by the FLSA. For example, coverage is not warranted because "[t]he Plaintiffs, quite simply, are fugitives from justice, and should be dealt with the Court [sic] in that manner . . . ." Second, Defendants argue that the doctrine of *in pari delicto* applies and bars recovery since Plaintiffs, as illegal aliens, have entered the country in violation of the law and "will tend to lie because they have no fear." Third, Defendants allege (1) that Plaintiffs' counsel committed a "serious felony" by representing illegal aliens and (2) that allowing illegal immigrants to bring suit "makes everyone in the courtroom (if the appropriate action is not taken) complicit with assisting a known illegal immigrant because two lawyers, the Judge, and the Marshall's service will all know that Plaintiffs are fugitives from justice . . . ." As none of these arguments matter in light of *Patel*, we decline to discuss them.

that undocumented workers are 'employees' within the meaning of the FLSA . . . ."). Specifically, we concluded, after passage of the Immigration Reform and Control Act of 1986 ("IRCA"), that illegal aliens were covered "employees" under the FLSA and could sue for unpaid wages. *Id*. The Supreme Court's opinion in *Hoffman Plastic* ruled that the National Labor Relations Board could not award backpay—for work never performed—to an illegal alien under the National Labor Relations Act ("NLRA") after Congress passed the IRCA. 535 U.S. at 147–49.

*Hoffman Plastic* is not "clearly on point" with *Patel*. First, *Patel* ruled on the FLSA and *Hoffman Plastic* ruled on the NLRA. Furthermore, in *Patel*, the illegal alien was "not attempting to recover back pay for being unlawfully deprived of a job. Rather, he simply [sought] to recover unpaid minimum wages and overtime for work *already* performed." 846 F.2d at 705. Conversely, the illegal alien in *Hoffman Plastic* sought backpay for being unlawfully deprived of his job after engaging in union organizing activities. 535 U.S. 140–41. Based on these distinctions, *Hoffman Plastic* did not clearly overrule *Patel*. Accordingly, we reiterate that illegal aliens are "employees" covered by the FLSA.

## B.

Defendants next argue that the district court committed error when it granted Plaintiffs' motion for summary judgment as to "enterprise coverage."

First, Defendants contend that the court mistakenly concluded that Defendants' annual sales exceeded the $500,000 threshold established by § 203(s)(1)(A)(ii). Second, Defendants argue that the district court incorrectly decided that they met § 203(s)(1)(A)(i)'s interstate commerce requirement. We review grants of summary judgment *de novo*, applying the same legal standard as the district court. *Fogade v. ENB Revocable Trust*, 263 F.3d 1274, 1287 (11th Cir. 2001).

We conclude that the district court properly granted summary judgment. First, as to annual gross revenue, Plaintiffs' complaint alleged "10. Based upon information and belief, at all times material to this complaint Defendants had an annual gross volume of sales or business done of not less than $500,000.00, exclusive of excise taxes at the retail which are separately stated, and at least two employees engaged in interstate commerce." Defendants' answer stated "10. Defendants admit that the annual gross revenue exceeds $500,000 per year; all other allegations contained in paragraph nine [sic] are denied." We hold Defendants to that admission. *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1177–78 (11th Cir. 2009) ("[T]he general rule [is] that a party is bound by the admissions in his pleadings. Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." (citations and internal quotation marks omitted)).

6

Second, after review of the entire record, we conclude that Defendants'

satisfied § 203(s)(1)(A)(i)'s interstate commerce requirement.  Defendants seem to

be attempting to resurrect the so-called "coming to rest" doctrine, which we have

explicitly rejected.  *Polycarpe*, 616 F.3d at 1221.  Therefore, we affirm the district

court's grant of partial summary judgment on this issue.[3]

## II.

As prevailing parties, Plaintiffs filed a motion seeking approximately

$120,000 in attorneys' fees and costs.  The district court eventually awarded

$112,495.  Defendants appeal that award, alleging (1) Plaintiffs' motion for

attorneys' fees was untimely, (2) the fees awarded were grossly excessive, and (3)

any fee award should have been reduced because Plaintiffs only partially

succeeded in the litigation.

## A.

The district court entered final judgment on July 31, 2009.  Defendants filed

a number of timely post-trial motions, including, *inter alia*, a motion for a new

---

[3] Defendants raise two additional arguments regarding the trial proceedings.  First, they argue that the district court erred in concluding that plaintiff Osorio did not qualify for the "executive exemption" to the FLSA.  29 C.F.R. § 541.100.  Second, Defendants contend that the district court abused its discretion by declining to allow Defendants (1) to impeach Plaintiffs' credibility by referencing their status as illegal aliens, and (2) to call a rebuttal witness to impeach Plaintiffs.  After review of Defendants' brief and the record, we conclude these claims have no merit and do not warrant further discussion.

trial pursuant to Federal Rule of Civil Procedure 59. The district court did not rule on these motions until March 2010.

On October 8, 2009—68 days after the district court entered judgment but before six months before it adjudicated post-trial motions—Plaintiffs moved for attorneys' fees. As prevailing parties, they requested more than $120,000 in fees and costs. Three attorneys worked on the case—Mr. Marban, Mr. Valaquez, and Mr. Diaz—and each submitted the number of hours worked and their requested hourly fee: $350, $300, and $295, respectively. The magistrate judge recommended that Plaintiffs be awarded $107,810 in attorneys' fees and $4,685 in costs. The district court adopted that recommendation and filed an order requiring Defendants to pay $112,495.

## B.

Defendants first argue that Plaintiffs' motion for attorneys' fees was untimely. At the relevant time, the local rules of the Southern District of Florida required that an attorneys' fees motion "be filed and served within thirty days of entry of a Final Judgment or other appealable order that gives rise to attorney's fees." S.D. Fla. Rule 7.3(A)(vii). It is undisputed that Plaintiffs filed their motion 68 days after the district court entered judgment. Accordingly, Defendants insist the motion is untimely and no fees should be awarded.

8

A litigant's failure to file a motion for attorneys' fees within the prescribed period can result in denial of that motion. *See Clark v. Hous. Auth. of Alma*, 971 F.2d 723, 727 (11th Cir. 1992). Certain post-trial motions, however, "operate[] to suspend the finality of the district court's judgment 'pending the court's further determination whether the judgment should be modified so as to alter its adjudication of the rights of the parties.'" *Members First Fed. Credit Union v. Members First Credit Union of Fla.*, 244 F.3d 806, 807 (11th Cir. 2001) (per curiam) (quoting *Browder v. Dir., Dep't of Corr.*, 434 U.S. 257, 267, 98 S. Ct. 556 (1978)) (holding that a Rule 59 motion to alter or amend judgment effectively tolls the time requirement for filing a motion for attorneys' fees). Therefore, judgments do not actually become "final" for purposes of an attorneys' fees motion until certain post-trial motions are adjudicated. *See id*. ("[T]he finality of a judgment is effectively postponed by the timely filing of a motion under Rule 59 . . . .").

While it is uncontested that Plaintiffs moved for attorneys' fees 68 days after the district court entered judgment, Defendants fail to appreciate that their timely Rule 59 motion extended Plaintiffs' deadline for requesting attorneys' fees. In other words, Plaintiffs could have filed a timely motion for attorneys' fees up to 30 days after the district court ruled on Defendants' new trial motion. As Plaintiffs filed their motion before the court's March 2010 denial of defendant's

9

post-trial motion, it was necessarily timely. Accordingly, we reject Defendants'

procedural challenge to the attorneys' fees award and address their substantive

attacks.

C.

Defendants next argue that the district court's attorneys' fees award was

grossly excessive. They allege that (1) the number of hours billed was excessive

because it was double that of defense counsel, (2) the hourly rates sought are

excessive, (3) the district court stated on the record—before trial—that it would

never award $100,000 in fees for Plaintiffs' counsels' work to that point, and (4)

Plaintiffs' counsel should have been estopped from receiving fees because they

have taken inconsistent positions in unrelated FLSA litigation.[4]

We review the district court's award of attorneys' fees for an abuse of

discretion, closely analyzing any legal conclusions reached during the fee

determination. *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387, 1389

(11th Cir. 1997). "An abuse of discretion occurs if the judge fails to apply the

proper legal standard or to follow proper procedures in making the determination,

or bases an award upon findings of fact that are clearly erroneous." *In re Red*

*Carpet Corp. of Panama City Beach*, 902 F.2d 883, 890 (11th Cir. 1990).

---

[4] The last two arguments have no merit, and we decline to discuss them.

10

"Although a district court has wide discretion in performing these calculations, the court's order on attorney fees must allow meaningful review—the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (alterations omitted) (citations and internal quotation marks omitted).

Generally, a prevailing plaintiff in a FLSA case is entitled to a reasonable award of attorneys' fees and costs. 29 U.S.C. § 216(b); *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1244 (11th Cir. 2009). Calculation of attorneys' fees involves multiplying the number of hours reasonably expended in litigating the claim and the customary fee charged for similar legal services in the relevant community ("lodestar amount"). *See Hensley v. Eckherhart*, 461 U.S. 424, 433, 103 S. Ct. 1993 (1983). A properly calculated lodestar amount "is itself strongly presumed to be reasonable." *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993) (per curiam) ("Consequently, the courts have severely limited the instances in which a lawfully found lodestar amount may be adjusted to a higher or lower level.").

The first step in determining the proper lodestar amount is calculating the number of hours reasonably expended on the litigation. Prevailing plaintiff's

attorneys "must exercise their own billing judgment to exclude any hours that are 'excessive, redundant, or otherwise unnecessary.'" *Id*. at 1149 (quoting *Hensley*, 461 U.S. at 434). Attorneys may bill adversaries for only the same hours they would bill a client. *Id*. Similarly, "*a court* may reduce excessive, redundant or otherwise unnecessary hours in the exercise of billing judgment." *Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir. 1988) (emphasis added). If the court concludes that the number of claimed hours is excessive, it may engage in "an across-the-board cut," so long as it provides adequate explanation for the decrease. *Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam).

Here, the magistrate judge began his hours-expended analysis by noting:

> [f]ollowing careful review of the submitted time records, the undersigned finds that most, but not all, of counsels' time entries are detailed, well documented and reflect a reasonable amount of time devoted to each listed task. In so finding, the undersigned has closely scrutinized the time entries specifically challenged by defendants.

The magistrate judge spent the next three pages reviewing the reasonableness of the hours presented. Notably, he reduced the fees for Mr. Marban by 20% because "he describe[d] the work performed on numerous tasks with only one corresponding time entry." Then, in considering Mr. Marban's hours, the magistrate judge considered the same arguments raised here—such as taking

12

excessive time to calculate damages, draft jury instructions, and generally familiarize himself with the case. Ultimately, the magistrate judge concluded that, after the 20% reduction, the number of hours Mr. Marban charged was reasonable under the circumstances. As to the other two attorneys, the magistrate judge concluded that their hours were reasonable because they clearly reflected the services performed and a reasonable number of hours in completing each. In conclusion, he stated that "[w]hile [the attorneys' fees award] exceeds plaintiffs' cumulative award, *the undersigned notes that excessive hours were expended by plaintiffs' counsel due to defendants' unnecessary litigation techniques which prolonged this litigation . . . .*" (emphasis added). After review, we cannot conclude that the magistrate's recommendation, as adopted by the district court, demonstrated any abuse of discretion in determining reasonable hours expended.

Reasonable hourly rates are determined by comparing attorneys' requested rate with the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541 (1984). The party applying for fees bears the burden of establishing the reasonableness of the proffered rate. *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (per curiam). While previous hourly rate awards are not given controlling weight, they do

provide some insight. *See Dillard v. City of Greensboro*, 213 F.3d 1347, 1354–55 (11th Cir. 2000) (per curiam). They do not, however, trump the attorney's actual billing rate to other paying clients. *Id*. at 1355.

Here, Plaintiffs' attorneys submitted an affidavit from a board certified labor and employment law attorney, who concluded that the hourly rate for each of the attorneys was reasonable. Furthermore, Plaintiffs cited other district court cases awarding two of Plaintiffs' attorneys the exact fees sought in this case. The magistrate judge cited these facts and noted that his "familiarity with such litigation and attorney's fees in general" supported the hourly rates requested by Plaintiffs' attorneys. Defendants complain that Plaintiffs' attorneys provided no evidence of their ordinary hourly rate, and they instead suggest that $100 per hour would be appropriate. However, Defendants provide no evidence for that hourly rate and only attack the credibility of Plaintiffs' expert by noting that he litigates similar cases. Nothing in Defendants' brief points to any error that could be considered an abuse of discretion in determining the appropriate hourly rate for Plaintiffs' attorneys.

As we have determined that the number of hours expended and the hourly rates are appropriate, a strong presumption of reasonableness applies. *See Resolution Trust Corp.*, 996 F.2d at 1150. After review, we do not believe

14

Defendants have demonstrated the district court abused its discretion in reaching the ultimate fee award.

## D.

Finally, Defendants argue that Plaintiffs "did not achieve total success, as they received only 63.88% of the monies that they sought. Accordingly, the lodestar should have been reduced by at least that amount."

Plaintiffs' success, or lack thereof, is an important consideration and can result in a conclusion that the lodestar amount must be reduced. *See Dillard*, 213 F.3d at 1354–55. Here, however, Plaintiffs were successful on their sole claim and received a significant portion of the damages sought. After liquidated damages were accessed, Plaintiffs received more than the overtime salary they originally requested. As such, we do not think the district court abused its discretion in its ultimate determination.

## III.

Based on the foregoing discussion, we affirm the district court's rulings.

**AFFIRMED.**