Margaret C. HAYES, Respondent,

v.

WDL TECHNOLOGIES, INC.,
et al., Appellants.

No. WD 72107.

Missouri Court of Appeals,
Western District.

June 30, 2011.

Brian R. Barjenbruch, Independence, MO, for Appellants.

Walter M. Brown, Kansas City, MO, for Respondent.

Before: JOSEPH M. ELLIS, P.J., VICTOR C. HOWARD, and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

WDL Technologies, Inc. (WDL), through the actions of its board of directors, Mr. Alan Lange, Sr., Mr. Alan Lange, Jr., and Mr. Terrance Crane (collectively "Defendants"), invalidated Ms. Margaret C. Hayes's shares of stock in the company. Ms. Hayes petitioned for, *inter alia*, a declaration that her shares were valid. The circuit court ruled that Ms. Hayes's shares were valid, but only if she paid $9,000 to WDL. Defendants appeal. We affirm as modified.

### Factual and Procedural Background

In May 2005, Mr. Lange Jr., WDL's vice president, recruited Mr. Timothy Hayes, Ms. Hayes's husband, to help promote WDL, a corporation selling training sessions for software. WDL later asked Mr. Hayes to pursue a merger with Bradford Learning, Inc. (Bradford), a corporation selling training materials for software. Mr. Hayes worked from home in the United Kingdom, on marketing strategies for WDL and preparing documents for the merger. Between July 2005 and February 2006, Mr. Hayes travelled to the U.S. to investigate Bradford's financial status and to negotiate a merger with its majority shareholder, Mr. James Lacey. Besides these activities, Mr. Hayes also provided other services to WDL. Eventually, WDL entered into a contract employing Mr. Hayes as its president and chief executive officer with a start date for March 1, 2006; the contract provided that it would terminate if Mr. Hayes's visa application was refused after an appeal.

On March 14, 2006, WDL acquired the stock of Bradford under an agreement, which required WDL to reorganize its structure. WDL increased its 500[1] shares, half held by Mr. Lange, Jr. and the other half by Mr. Lange, Sr. to 5,000 shares of common stock of which 1,250 and 250 shares would be issued to Mr. Lacey and Mr. Alexander Larson, a significant shareholder of Bradford, respectively. WDL also agreed to issue 1,250 shares to Mr. Richard and Mrs. Kathy Hartke for $50,000 in cash and 1,500 to Ms. Hayes for $60,000 in "the form of cancellation of indebtedness and services provided by Tim Hayes."

Pursuant to a stock purchase agreement, WDL issued Ms. Hayes a certificate of stocks for the agreed upon consideration of cancellation of a $60,000 antecedent debt. Specifically, WDL's indebtedness to Ms. Hayes consisted of $20,000 in loans; $16,000 in fixed assets;[2] $9,000 in services provided by Mr. Hayes; and $15,400 in expenses Mr. Hayes incurred until December 31, 2005. Mr. Lange, Jr. signed the agreement after he had certified that the consideration was valid.

The new shareholders entered an agreement with WDL, listing the respective shares of each. The agreement also stated that WDL would not transfer or dispose of Bradford stock or intellectual property for two years unless it obtained the consent of all the shareholders. Thereafter, special meetings for WDL's shareholders and directors were held to elect new officers and new directors; Mr. Hayes was elected president and CEO and made a director. Mr. Lange, Jr., Mr. Hartke, and Mr. Lacey were also made directors.

At some point, Mr. Hayes and Mr. Hartke terminated Mr. Lange, Jr. from his sales position with WDL. Mr. Lange, Jr. remained a director, an officer, and a shareholder. A few months later, on August 24, 2006, Mr. Lange, Jr. sent notice of a special board of directors meeting to occur on August 29, 2006, to remove Mr. Hayes from the board for alleged fraudulent misrepresentations on his visa application. On August 28, 2006, Ms. Hayes and Mr. Hartke sent the board of directors a notice of a shareholders' special meeting to occur on August 29, 2006, to elect a new board. The shareholders' meeting was cancelled, but the board's meeting occurred as scheduled. At the meeting, Mr.

---

1. The Langes sold their stock to WDL, and WDL then issued 500 shares to Mr. Lange, Jr.

2. Mr. Hayes testified that he gave WDL his office furniture, equipment, computer equipment, and other items from a business that he and Ms. Hayes had closed in Chicago.

Hayes informed the board that it had no power under WDL's bylaws to remove a director. Consequently, another director moved to amend the purpose of the meeting to remove Mr. Hayes as the president and CEO; the vote did not succeed.

On September 8, 2006, Defendants held a board of directors meeting to, *inter alia,* return Bradford intellectual property, to notify Mr. Hayes that he was not listed as a director or as the CEO in the filings with Missouri's Secretary of State's Office, to withdraw Ms. Hayes's shares, and to amend WDL's bylaws. On that same day, Mr. Hayes was notified and ordered to "cease and desist all acts" in his capacity as CEO until he obtained his visa. On September 17, 2006, Ms. Hayes was notified her stock had been invalidated for failure of consideration and the stock purchase agreement rescinded. Defendants voted to invalidate her shares because she did not tender consideration of $60,000: the property investment was worth less than $16,000 and Mr. Hayes did not have a legal claim against WDL for compensation because he did not have a work visa in 2005 when he travelled and provided his services. WDL did not repay Ms. Hayes $20,000 for the loans, and placed her fixed assets in storage for her to retrieve.

Ms. Hayes petitioned the circuit court for declarations to secure her interest in WDL's assets, including the validation of her shares, and sought other equitable relief against Defendants. The circuit court issued a preliminary injunction validating the shares of Ms. Hayes, ordering Defendants to reinstate WDL's corporate status,[3] and to cease actions jeopardizing WDL's assets. The circuit court eventually appointed a trustee to reinstate WDL

corporate status, and released the trustee when that task was completed.

On August 8, 2008, Defendants filed a motion for summary judgment; Ms. Hayes submitted an untimely response, and the circuit court denied the motion. At the bench trial, the above evidence was admitted. Additionally, the immigration attorney who filled out Mr. Hayes's visa application testified that there were no fraudulent representations with Mr. Hayes application. The immigration attorney stated that a person who worked without a visa was owed fair compensation for his labor. After hearing all of the evidence and arguments, the circuit court made the preliminary injunction permanent and declared Ms. Hayes's shares valid, but only if she paid $9,000 within twenty-five days after the judgment. Thereafter, Ms. Hayes made the payment to the court. Defendants appeal.

### Standard of Review

We review bench-tried cases under *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We affirm the judgment if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Id.*

### Legal Analysis

In the first and second points, Defendants argue the circuit court erred in denying the motion for summary judgment because Ms. Hayes filed a late response without leave from the court and failed to properly rebut the uncontroverted facts. In the third point, Defendants argue the circuit court erred in finding in Ms. Hayes's favor because it enforced an agreement in which illegal consideration

---

**3.** In deciding to return the Bradford property, Mr. Lange and other directors commenced winding down WDL.

was tendered. Because Defendants' first two points are unreviewable, we dismiss them. *See Gamble v. Browning*, 277 S.W.3d 723, 729–30 (Mo.App. W.D.2008) (stating a denial of summary judgment is not reviewable even if it is an appeal from a final judgment except in limited circumstances); *Stotts v. Progressive Classic Ins., Co.*, 118 S.W.3d 655, 669 (Mo.App. W.D.2003) (dismissing the point that challenged the denial of a summary judgment).

■ In the third point, Defendants argue that the circuit court misapplied the law in reforming the stock purchase agreement instead of refusing to enforce it between Ms. Hayes and WDL in that the agreement was void from its inception because part of the consideration was illegal. Defendants rely on *Rice v. James*, in which the appellate court refused to enforce an agreement because the agreement itself sought to violate the city's ordinance requiring electrical contractors to have a work permit. 844 S.W.2d 64, 69 (Mo.App. E.D.1992). In situations in which the parties contract to violate the law, the agreement may be void from its inception. *See id.* In *Rice*, the parties orally agreed that the plaintiff, an unlicensed electrical contractor, would pay defendant to obtain a work permit for the plaintiff's project because plaintiff could not obtain one. *Id.* at 65. The circuit court did not enforce the promise because the fact that the permit was illegal made the consideration illegal. *See id.* at 69. Neither an illegal purpose for the contract nor illegal consideration is present in this case. Ms. Hayes and WDL's contract was for a legal purpose: Ms. Hayes receiving shares in WDL's stock in exchange for her cancelling WDL's debt.

■ Defendants' argument that the debt owed for Mr. Hayes's labor as consideration for Ms. Hayes's shares was illegal because Mr. Hayes worked without legal authorization focuses on the Immigration Reform and Control Act of 1986 (IRCA), 8 U.S.C. § 1324a, which prohibits the hiring of undocumented immigrant workers and sanctions employers who do. *See Patel v. Quality Inn South*, 846 F.2d 700, 705–06 (11th Cir.1988), *cert. denied*, 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 182 (1989). However, the *Patel* Court rejected a similar argument and found that IRCA did not bar an undocumented worker's right to compensation under the Federal Labor Standards Act (FLSA), 29 U.S.C. §§ 201–19. *Id.* at 704–05. It held that an immigrant worker was entitled to compensation according to the FLSA, despite his immigration status. *Id.* at 705–06. Thus, Mr. Hayes's visa status as a visitor rather than a temporary worker when he worked for WDL in 2005 did not relieve WDL of its obligation to properly compensate him for the work he had performed. WDL's indebtedness to Mr. Hayes for his services is a *bona fide* debt as required to constitute legal consideration in Missouri. *See* § 351.160.1 RSMo 2000. Moreover, section 351.160.1 lists "labor done" as an appropriate method to obtain shares of a corporation. Thus, Mr. Hayes's labor for which he did not receive compensation was legal consideration.

Consequently, the circuit court erred when it implicitly relieved WDL of its $9,000 obligation owed to Mr. Hayes by ordering Ms. Hayes to pay $9,000 to validate her shares. Defendant's third point is denied.

## Conclusion

Therefore, we affirm the circuit court's finding that the shares were valid, reverse the $9,000 damages award to WDL, and order the Circuit Court of Jackson County to release the $9,000 Ms. Hayes paid into

the court.[4]  The judgment is affirmed as modified.

ELLIS, P.J., and HOWARD, J. concur.

---

4.  Rule 84.14 allows this court to finally dispose of a case by giving judgment as the court ought to give.  The Missouri Supreme Court recently stated this rule applies to circumstances that do not indicate a need for further proceedings.  *DeBaliviere Place Ass'n v. Veal,* 337 S.W.3d 670, 679 (Mo. banc 2011).  Because Ms. Hayes deposited the money with the circuit court, further proceedings are not necessary.